IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

YVONNE LETICIA VALLES, §
    *Plaintiff*, §
                                          §        EP-18-CV-00090-RFC
-vs- §
                                          §
NANCY A. BERRYHILL, ACTING §
COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,[1]
    *Defendant*.

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Both parties consented to trial on the merits before a United States Magistrate Judge, and the case was transferred to this Court for trial and entry of judgement pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas. For the reasons set forth below, this Court orders that the Commissioner's decision be **REVERSED** and **REMANDED.**

## PROCEDURAL HISTORY

On November 18, 2014, Plaintiff filed her application for DIB alleging a disability onset date of May 26, 2014. (R:184). The Agency denied her claim on December 31, 2014, and again upon reconsideration on April 20, 2015. (R:95,104). On October 24, 2016, a hearing was held

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continued service as Acting Commissioner of Social Security violated the Federal Vacancies Reform Act of 1998. GOVERNMENT ACCOUNTABILITY OFFICE, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration (2018), https://www.gao.gov/assets/700/690502.pdf. Accordingly, this position is now vacant.

before Administrative Law Judge Susan Whittington ("ALJ"). (R:44–77). The ALJ issued an unfavorable decision on February 27, 2017, denying benefits. (R:22–37). The Appeals Council subsequently denied Plaintiff's request for review on January 24, 2018. (R:1–4).

## ISSUE

Plaintiff presents the following issue for review:

1. Whether the ALJ erred in her evaluation of the treating physician's opinion. (ECF. No. 15:2).

## DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir. 1984)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B. Evaluation Process

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment(s) that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment(s) prevent claimant from performing past relevant work; and (5) whether the impairment(s) prevent the claimant from doing any other work. 20 C.F.R. § 404.1520.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof at the first four steps. Once met, the burden will then shift to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir.1988). If the

Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Selders*, 914 F.2d at 618 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).

Here, at the first step, the ALJ found that Plaintiff had not engaged in a substantial gainful activity since May 26, 2014, through March 30, 2016, the date last insured. (R:24). At the second step, the ALJ found that Plaintiff had severe impairments of cervicalgia and spondylolisthesis. (*Id.*). The ALJ also found that Plaintiff had the nonsevere impairment of carpal tunnel syndrome. (R:25). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Before moving to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (R:27). Specifically, the ALJ found Plaintiff could perform the following: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally crouch; occasionally reach overhead with the bilateral upper extremities; understand, remember and carry out simple instructs and perform simple tasks; and have frequent interaction with supervisors, coworkers, and the general public. (*Id.*).

At the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. (R:35). At the last step, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R:36). Consequently, the ALJ concluded that Plaintiff had

not been under a disability, as defined in the Social Security Act, from May 26, 2014, through March 30, 2016, the date last insured. (R:37).

## C. Analysis

Plaintiff contends that the ALJ failed to properly consider the medical opinions of her treating or examining physicians. (ECF. No. 15:3–4). Specifically, Plaintiff contends the ALJ erred by failing to discuss the six factors required by 20 C.F.R. § 404.1527(c)(2), as no examining or treating physician opinions contradicted the opinions of Dr. Sergio Pacheco, Dr. Andrew Palafox, Dr. Jose Barahona, Dr. Oscar Prez, and Dr. Juan Perez. (ECF. No. 15:4–5). Had the ALJ properly considered these medical opinions, the ALJ would have found Plaintiff's RFC to be far more limited. (ECF. No 15:10–11). In the alternative, the ALJ should have opted for further development and obtained further clarification. (ECF. No. 15:11).

Ordinarily, a treating physician's opinion should be given controlling weight if it is: (1) well-supported by medically acceptable clinical and laboratory diagnostics techniques; and (2) not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Thomas v. Astrue*, 227 F. App'x 350, 353 (5th Cir. 2008). However, a treating physician's opinions are not conclusive. *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005). The ALJ may assign little or no weight to the opinion of any physician for good cause. *Newton,* 209 F.3d at 455–56. Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostics techniques, or otherwise unsupported by evidence." *Perez,* 415 F.3d at 466.

Absent reliable medical evidence from a treating or examining physician controverting the claimant's treatment specialist, an ALJ may reject the opinion of a treating physician only if

5

the ALJ performs a detailed analysis under the applicable federal regulation. *Newton*, F.2d at 453. Specifically, the regulation requires the consideration of:

1. Length of the treatment relationship and the frequency of examination;
2. Nature and extent of the treatment relationship;
3. Supportability;
4. Consistency;
5. Specialization; and
6. Other factors that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(c)(2).[2] Here, the record shows that Dr. Andrew Palafox was Plaintiff's only treating physician.

### a. Medical Evidence Submitted After Plaintiff's Date Last Insured

The ALJ indicated that some of Plaintiff's medical evidence and opinions took place after the relevant time period under review. (R:34–35). The relevant period dates from May 26, 2014, through March 30, 2016. (R:37). This is the only relevant period the law required the ALJ to consider, given the expiration of Plaintiff's insured status. *Brown v. Astrue*, 344 F.App'x 16, 20 (5th Cir. 2009). Although retrospective medical evidence may be relevant to the severity of Plaintiff's condition before the expiration of her insured status, the Fifth Circuit has limited those cases specifically to post traumatic stress disorder. *Id.* (citing *Loza v. Apfel*, 219 F. 3d 378, 396 (5th Cir. 2000)).

### b. Dr. Andrew Palafox

The record shows that Dr. Palafox, an orthopedic surgeon, treated Plaintiff multiple times from February 4, 2015, to September 7, 2016. (R:479–87, 808–37, 1001–02). On February 4, 2015, Dr. Palafox noted that Plaintiff's musculoskeletal system was positive for radiation of pain down the leg and displayed joint swelling. (R:482). Further, Plaintiff's neurological system was

---

[2] Plaintiff's claim was filed prior to March 27, 2017, therefore the former rules for evaluating medical source opinions apply. *See* 20 C.F.R. § 404.1527.

positive for numbness and tingling in the leg and right arm. (*Id.*). A physical examination that day showed severe limitations of motion with paraspinal spasms on Plaintiff's neck cervical region, some limitations of motion in Plaintiff's right shoulder, diminished reflexes, right brachial radialis reflex, and Plaintiff's back showed tenderness to touch and paraspinal spasms. (R:483). Moreover, Dr. Palafox, through a MRI done on September 5, 2014, and a cervical MRI done on July 15, 2014, noted that Plaintiff showed injuries at her L4-L5, ultimate disc at L5-S1, left C4-C5, and C7-C8. (*Id.*).

On March 4, 2015, Dr. Palafox examined Plaintiff and the physical examination showed limited motion of the neck, crepitus, and tenderness. (R:480). Her neurological and vascular examinations were grossly intact in the upper extremities. (*Id.*). Finally, Dr. Palafox diagnosed Plaintiff with discogenic pain and intermittent radiculopathy. (*Id.*). Dr. Palafox saw Plaintiff multiple times and in all of his treatment notes, he consistently found that Plaintiff suffered from significant wrist, back, leg, and knee issues. (R:807–37).

On August 5, 2015, Dr. Palafox filled out a Medical Source Statement ("MSS"). (R:484-87). In the MSS, Dr. Palafox found the following limitations for Plaintiff: occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday and sit less than 6 hours in an 8-hour work day; limited ability in the upper and lower extremities to push and pull; occasionally balance; never climb ramps, stairs, ladder, ropes, and scaffolds; never kneel, crouch, crawl, or stoop; limited in reaching all directions, handling, fingering, and feeling; unlimited seeing, hearing, and speaking; and limited by temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, gases. (*Id.*).

7

The findings by Dr. Palafox were more limited than the ALJ's RFC; however, it is unclear what weight the ALJ gave to Dr. Palafox's opinion. In her decision, the ALJ indicated that Dr. Palafox's opinions, those that were provided before Plaintiff's date last insured, were inconsistent with his own treatment notes.(R:34).

### c. Dr. Oscar Perez

The record indicates that Dr. Oscar Perez, a psychiatrist, treated Plaintiff from May, 11, 2016, to August 18, 2016. (R:901–906). Dr. O. Perez's medical opinion came after Plaintiff's date last insured, and thus, is not relevant to Plaintiff's current evaluation.

### d. Dr. Juan Perez

The record shows that Dr. Juan Perez treated Plaintiff from February 16, 2016, to April 27, 2016. (R:840–51). Dr. J. Perez is not a treating physician because during the relevant period under review, Dr. J. Perez only treated Plaintiff twice. 20 C.F.R. § 404.1527(a)(2); *See Brown*, 344 F.App'x at 21 (indicating that five visits with a physician, with most of the visits lasting less than 20 minutes, does not establish a treating relationship with that physician).

On March 22, 2016, Dr. J. Perez found Plaintiff was suffering from tension headache, cervical spine disease, chronic pain, hyperlipidemia, hypothyroidism, major depression, tenosynovitis of wrist, and right knee meniscal tear. (R:845). On February 16, 2016, Dr. J. Perez diagnosed Plaintiff with insomnia, anxiety, hyperlipidemia, hypothyroidism, tension headache, chronic pain, major depression, cervical spine disease, and open wound on the left thumb. (R:848). Finally, on May 5, 2017, Dr. J. Perez sent the Appeals Counsel a letter indicating that Plaintiff suffered from chronic neck and back pain for the last three years, and Plaintiff has not improved despite seeing multiple physicians. (R:15). It is unclear what weight the ALJ gave to these medical evidence.

Dr. J. Perez also completed a loan discharge form on May 6, 2016. (R:794–96). In this form, Dr. J. Perez indicated that Plaintiff suffered from chronic pain and cervical spine disease. (R:795). Further, Dr. J. Perez indicated that Plaintiff can only stand for two hours straight. (*Id.*). The ALJ gave Dr. J. Perez's loan discharge form little weight because it was submitted after Plaintiff's date last insured, and thus, is not relevant to her current evaluation. (R:35).

### e. Dr. Sergio Pacheco

Plaintiff visited Dr. Sergio Pacheco, a neurosurgeon, on May 26, 2015. (R:488–91). In the neurological exam, Dr. Pacheco concluded that Plaintiff suffered from chronic post-traumatic cervical pains and chronic post-traumatic low back pain syndrome from musculoskeletal articular ligamental origin without objective neurological dysfunction. (R:490). Plaintiff also suffered from chronic post-traumatic anxiety depression syndrome. (*Id.*). Dr. Pacheco concluded that Plaintiff currently could not engage in any gainful occupations. (R:491).The ALJ Gave Dr. Pacheco's opinion little weight. (R:34). The ALJ indicated that finding of disability was reserved solely to the Commissioner, and Dr. Pacheco's neurological findings supported the ALJ's decision. (*Id.*).

### f. Dr. Jose Barahona

On October, 11, 2016, Dr. Jose Barahona opined that Plaintiff suffered from low back pain, neck pain, and right shoulder pain. (R:1005–06). Dr. Barahona's opinion came after Plaintiff's date last insured, and thus, is not relevant to her current evaluation.

### g. The ALJ Erred by Failing to Give Dr. Palafox's Opinion Controlling Weight

By refusing to give Dr. Palafox's opinion controlling weight, the ALJ erred by failing to conduct the necessary analysis under 20 C.F.R. § 404.1527(c)(2). In this case, no examining or treating physicians contradicted Dr. Palafox's opinions, and the ALJ cannot play doctor by

9

picking and choosing her supporting evidence. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (indicating that an ALJ must be careful not to succumb to the temptation to play doctor and making his/her own independent medical assessments); *Salmond v. Berryhill*, 892 F. 3d 812, 818 (5th Cir. 2018) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000)).

While some of medical evidence may be inconsistent with Dr. Palafox's overall conclusion, each physician, including Dr. Palafox, consistently found Plaintiff to have significant restrictions and chronic pain in her back, leg, and shoulder. Because "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" nor is this a case where the ALJ had to weigh contradicting medical opinions from another examining or treating physician, the ALJ must give a detailed analysis under 20 C.F.R. § 404.1527(c)(2) before rejecting or failing to give Dr. Palafox's opinion controlling weight. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

## CONCLUSION

The ALJ's findings regarding the weight given to Plaintiff's treating source are not supported by substantial evidence. Thus, the Court **HEREBY ORDERS** that the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SIGNED** this 9th day of November, 2018.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE